

By Email

# STROOCK

September 30, 2015

*Docket as Plaintiffs' letter brief.*

Brian M. Rothery
Direct Dial: 212-806-6205
Fax: 212-806-6006
brothery@stroock.com

Hon. Jed S. Rakoff
Room 1340
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    *JDS Therapeutics, LLC et al. v. CVS Pharmacy, Inc.,*
       Case No. 1:15-cv-04365 (JSR) (AJP)

Your Honor:

We represent Plaintiffs JDS Therapeutics, LLC and Nutrition 21, Inc. ("JDS/N21" or "Plaintiffs"), and write in opposition to the September 25, 2015 letter motion submitted by defendant CVS Pharmacy, Inc. ("CVS") seeking to compel production of testing or analysis of CVS products performed at the behest of Plaintiffs' counsel in anticipation of litigation and/or as trial preparation work-product. CVS's motion violates Rules 26(a)(2), (a)(3), (b)(3), and (b)(4) of the Federal Rules of Civil Procedure, and the schedule set forth in this Court's Civil Case Management Plan (D.I. 16, hereinafter "CCMP") regarding expert disclosures.

Rather than perform its own testing and analysis of its own products, CVS seeks immediate production of Plaintiffs' counsel's work-product testing of CVS's products, including pre-filing testing as well as any post-filing, ongoing testing. To be clear, Plaintiffs informed CVS that they would search for and produce any documents regarding testing of CVS products that were created by JDS/N21 in the ordinary course of business. CVS cannot demonstrate "substantial need" for counsel's work product testing as CVS can certainly test its own product for nicotinic acid, and can undertake any other testing it desires to refute infringement of the asserted patents. In addition, Plaintiffs have already produced to CVS almost 55,000 pages of pertinent material, including all of the expert reports and exhibits relevant to infringement from the prior litigation regarding Centrum® products, *JDS Therapeutics, LLC et al. v. Pfizer Inc. et al.*, Case No. 12-cv-9002 (JSR) (the "*Pfizer* case"). Such litigation material included testing on Centrum products for nicotinic acid, in addition to other testing. The primary products at issue in this litigation are knock-off products CVS has made to compete with Centrum. Thus, CVS's argument that it has a "substantial need" for discovery of Plaintiffs' counsel's work-product testing is disingenuous. Furthermore, all of CVS's arguments regarding "substantial need" are complete conjecture. If and when CVS needs to test CVS's own products in a manner that could not have been reasonably anticipated given the patent claims identified in infringement contentions and in light of the *Pfizer* case discovery, then CVS can move for an extension of the CCMP deadlines regarding rebuttal

STROOCK & STROOCK & LAVAN LLP • NEW YORK • LOS ANGELES • MIAMI • WASHINGTON, DC
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

Hon. Jed S. Rakoff
September 30, 2015
Page 2

expert disclosures. In fact, the CCMP allows for two months of discovery following initial expert disclosures, and thus provides ample time for CVS to obtain discovery of any expert testing relied upon by Plaintiffs.

Essentially, CVS seeks to ignore the Court's CCMP with regard to expert disclosures, and to obtain real-time discovery of counsel's work-product regardless of whether or not such work-product will ever be relied upon or used at trial, or whether such work product was performed by a non-testifying expert consultant. This Court's CCMP and Rule 26 of the Federal of Civil Procedure contemplate a balance of competing interests, by permitting counsel a zone of privacy to develop its case while also providing for discovery of any expert materials that will be relied upon at trial through expert disclosures. Here, as in most patent cases, expert disclosures are to be provided later in the discovery period so that counsel can make appropriate strategic decisions regarding experts after obtaining fact discovery.[1] CVS's motion ignores the schedule for expert disclosures in the CCMP, as well as the protections afforded by Fed. R. Civ. P. 26, and even seeks to compel expert disclosures of material that may <u>remain</u> work-product, notwithstanding that Plaintiffs have yet to take a single fact deposition and that CVS has produced a mere <u>63</u> documents to date, 19 of which are documents produced by two of CVS's suppliers. The Court should deny CVS's motion so that Plaintiffs may obtain fact discovery in order to properly develop their case and make timely, appropriate expert disclosures as contemplated by the Federal Rules and this Court's CCMP.

## I. Counsel's Testing Constitutes Work–Product Not Subject To Discovery

Pre-filing investigations are clearly protected by the work-product doctrine, and as such are not proper subjects of general discovery. An abundance of relevant case law evidences the protection extended to such investigations, in recognition of the principle that the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *U.S. v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (internal citations omitted). *See, e.g., TQP Development, LLC v. 1-800-Flowers.com, Inc.*, 2013 WL 7853448, at *1 (E.D. Tex. July 22, 2013) (denying defendant's motion to compel production of documents relating to pre-filing investigation, finding that "the work product doctrine is a valid objection to a pre-suit investigation performed by agents of a party in anticipation of litigation."); *Florida v. Abbott Laboratories*, 2009 WL 1764566, at *1 (D. Del. June 23, 2009) ("Pre-suit investigations are protected by the attorney-client privilege and the work product doctrine; therefore, [a party] <u>need not respond</u> to any discovery requests seeking such information.") (emphasis added); *see also* PATENT CASE MANAGEMENT JUDICIAL GUIDE § 4.6.1 (Federal Judicial Center, 2009 ed.) ("Occasionally, the issue arises outside of the Rule 11 context, where a dispute over infringement contentions, for example, leads a defendant to request discovery of the patentee's pre-filing

---

[1] Notably, CVS has affirmatively recognized the timing of expert disclosures as set forth in by the CCMP, as CVS objected to 85 of Plaintiffs' discovery requests—including requests seeking testing of CVS products for nicotinic acid, and other testing—stating that "CVS further objects to this Request as premature to the extent it seeks information that will be disclosed during expert discovery in accordance with the Scheduling Order in this matter."

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI · WASHINGTON, DC
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

Hon. Jed S. Rakoff
September 30, 2015
Page 3

investigation. In the absence of waiver, the best practice is to deny such discovery."). In *Nycomed US Inc. v. Glenmark Generics Ltd. et al.*, Case No. 08-cv-5023-CBA-RLM, D.I. 115 (E.D.N.Y. Aug. 4, 2009) (internal citations omitted), the court found that "any testing that was performed was in direct anticipation of this litigation, at the direction and pursuant to the advice of [] counsel, and if [Plaintiff] does not intend to offer proof of that testing at trial, then information concerning the testing would be protected by the work-product doctrine." Thus, any testing performed as part of Plaintiffs' pre-filing investigation is protected work-product.

The same goes for any ongoing or post-filing testing performed at counsel's behest. While CVS argues that testing is factual in nature and therefore discoverable, testing that was done at the direction of attorneys is indicative of the litigation strategy and mental impressions of the attorneys directing such tests.[2] *Reckitt Benckiser LLC v. Amneal Pharmaceuticals, LLC*, 2012 WL 2871061, at *6 (D. N.J. July 12, 2012) ("Even tests which generate factual data—when conducted at the direction of counsel and in preparation for litigation—are strongly indicative of the mental impressions, conclusions, opinions, or legal theories of [a party's] attorneys and are therefore protected by the work product doctrine.") (internal citations omitted). Moreover, CVS is not just seeking hard data. Rather, CVS seeks all "testing and analysis" supporting Plaintiffs' infringement contentions.

CVS's argument that it requires immediate access to Plaintiffs' testing of CVS's products in order to defend itself in this action is absurd. CVS is perfectly capable of testing its own products. In addition, Plaintiffs have provided CVS with almost 55,000 pages of documents, including the

---

[2] The cases cited by CVS do not contradict this principle. In *Arthrex, Inc. v. Parcus Medical, LLC*, 2012 WL 3778981 (M.D. Fla. Aug. 31, 2012), the court found that documents considered by plaintiff as part of its pre-filing investigation were discoverable, but did not address discoverability of testing done at the behest of counsel in anticipation of litigation, which is at issue here. In *AM Int'l, Inc. v. Eastman Kodak Co.*, 1982 WL 171002 (N.D. Ill. Oct. 25, 1982), the court found the sufficiency of plaintiff's pre-filing investigation to be directly at issue as a result of defendant's unfair competition claim, and therefore found the details of such investigation discoverable despite being work-product. Unlike the facts and circumstances of *Arthrex* or *AM Int'l*, CVS has not even alleged that Plaintiffs conducted an inadequate pre-filing investigation. Even if CVS were to raise Plaintiffs pre-filing investigation, it would not be ripe for discovery until after adjudication of this case on the merits, and even then, only if CVS could demonstrate extraordinary circumstances. *SAGE Electrochromics Inc. v. View Inc.*, 2013 WL 4777164, at *3 (N.D. Cal. Sept. 6, 2013) ("View's motion to strike veers closely to making a Rule 11 argument about the adequacy of SAGEs pre-suit investigation, and the court notes that the merits of such an argument are not properly before the court at the discovery stage of the proceedings.") (citations omitted); *Vasudevan Software, Inc. v. International Business Machines Corp.*, 2011 WL 940263, at *5 (N.D. Cal. Feb. 18, 2011) ("[T]he weight of authority does indeed suggest that discovery in relation to Rule 11 motions is allowed only in extraordinary circumstances.").

In *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (7th Cir. 1981), another case cited by CVS, plaintiff attempted to use the work-product doctrine as both a sword and a shield, refusing to produce undisclosed testing data while simultaneously relying on such data as justification for continuing the litigation even after all disclosed testing had been wholly discredited. And in *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F.Supp.2d 1022 (N.D. Cal. 2010), the court found plaintiffs' infringement contentions chart insufficient under N.D. Cal.'s stringent local patent rules, and held that plaintiffs had to specify how the accused products met claim limitations in light of plaintiffs' pre-suit reverse engineering. Although the court in *Shared Memory Graphics* required supplementation of plaintiffs' infringement contentions to meet the requirements of the local rules, the court did not require actual production of any underlying testing that plaintiffs had done in drawing the conclusions asserted in their contentions.

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI · WASHINGTON, DC
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

Hon. Jed S. Rakoff
September 30, 2015
Page 4

reports of Plaintiffs' experts on infringement from the *Pfizer* case, which describe in detail Plaintiffs' infringement claims and the factual bases for such claims. The CVS accused products are knock-offs of Centrum products at issue in the *Pfizer* case, and their labels explicitly advertise such products as comparable to Centrum. As such, CVS has already been provided with a wealth of information directly relevant to the infringement claims Plaintiffs have levied against the accused CVS products in this action. While it would be more convenient for CVS to piggyback on Plaintiffs' work-product, rather than prepare and execute testing of CVS's own products, mere inconvenience falls far short of the showing of "substantial need" or "undue hardship" that is required to overcome the protections given to materials prepared in anticipation of litigation. *Reckitt*, 2012 WL 2871061, at *6 ("[W]here a party has the ability to 'perform its own tests', '[s]uch testing would not be [considered] an undue hardship'.") (quoting *U.S. ex rel. Dye v. ATK Launch Systems Inc.*, 2011 WL 996975, at *5 (D. Utah Mar. 16, 2011)). Accordingly, CVS has not and cannot demonstrate the "substantial need" required to trump the interests of the work-product doctrine.

Tellingly, CVS argues that "[t]he schedule in this case ... does not provide time for the necessary discovery of third party testing entities between opening expert reports on November 20, 2015, and the responsive reports on December 17, 2015." Thus, CVS tacitly admits it is seeking premature expert disclosures. But rather than move the Court at the appropriate time to extend the discovery deadlines provided by the CCMP, CVS seeks to challenge the deadlines set forth in the CCMP for only the Plaintiffs' expert disclosure requirements, while leaving CVS's expert disclosure deadlines intact. Such gamesmanship should not be allowed. Any expert testing that Plaintiffs intend to use as evidence in this action will be timely disclosed to CVS according to the expert disclosure deadlines provided by the CCMP. CVS appears to argue that because any testing on which Plaintiffs intend to rely must be tendered before the close of discovery, CVS is entitled to all testing immediately, including any and all ongoing testing. CVS's position is unsupported by case law—even the case law proffered by CVS. *See Tillotson Corp. v. Shijiazhuang Hongray Plastic Products, Lt.*, 244 F.R.D. 683, 693 (N.D. Ga. 2007) ("[R]ecognizing that the information was prepared in anticipation of litigation, this court will not require the plaintiff to disclose the test data unless it relies on that information to support its infringement claims or will use that information in the future.") (emphasis added); *see also Fast Memory Erase, LLC v. Spansion, Inc.*, 2009 WL 4884091, at *1 (N.D. Tex. Dec. 16, 2009) (holding that plaintiff's reliance on select testing data for preliminary infringement contentions did not waive Rule 26(b)(4)(B) protection of related testing reports and underlying data).

CVS, however, does not only seek premature disclosure of expert testing on which Plaintiffs intend to rely at trial, but rather, CVS seeks all testing data done at the behest of Plaintiffs' counsel, even testing done by non-testifying consulting experts. This is precisely the information that Rule 26(b)(4)(D) exists to protect. "Rule 26([b])(4)(D) does not only prohibit discovery of mental impressions, it also protects 'facts known or opinions held' by a consulting expert as well." *Sloan Valve Co. v. Zurn Industries*, 2012 WL 5499412, at *3 (N.D. Ill. Nov. 13, 2012). Moreover, "[e]ven the methodology employed by a consulting expert is off-limits" under this Rule. *Id.*

NY 75881998

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI · WASHINGTON, DC
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

Hon. Jed S. Rakoff
September 30, 2015
Page 5

In summary, CVS seeks the work-product testing and analysis of Plaintiffs' counsel in violation of the work-product protections afforded by Rule 26, and contrary to the schedule set forth in this Court's CCMP regarding expert disclosures. Plaintiffs should be able to pursue fact discovery, undertake trial preparations, and make expert disclosures according to the timeframe provided by the CCMP, and accordingly, CVS's motion to compel should be denied.

## II. Requiring Plaintiffs To Prepare A Privilege Log Is Unduly Burdensome and Contrary to the Federal Rules

Plaintiffs objected to creating an schedule of withheld testing documents because it would disclose counsel's pre-filing investigation, mental processes, and work-product, and would identify potential non-testifying expert consultants in violation of Rule 26. As indicated above, including footnote 2, counsel's pre-filing investigation is not at issue or ripe for discovery, and thus discovery is off-limits. Additionally, courts have held that even identifying a non-testifying expert is a violation of Rule 26. *See Liveperson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546, at *2 (S.D.N.Y. July 30, 2015). CVS's demand for a privilege log in connection with discovery on Plaintiffs' counsel's testing is little more than an obvious attempt to obtain premature identification of Plaintiffs' expert testing in violation of the CCMP, as well as discovery of counsel's pre-filing investigations, trial strategies, mental processes, and the identities of Plaintiffs' non-testifying experts in violation of Rule 26(b)(4)(D).

In addition, creating such a schedule of withheld documents, including especially ongoing testing prior to expert discovery, would be unduly burdensome and wasteful. Creating a log of counsel's ongoing testing activities in preparation of trial invades counsel's work-product, and would be a waste of resources as such testing may form, and ultimately be disclosed as part of, Plaintiffs' expert disclosures. Accordingly, CVS's request for a privilege log should be denied.

## III. Conclusion

In light of the foregoing, Plaintiffs, through their undersigned counsel, respectfully request that this Court deny CVS's motion to compel and allow discovery to proceed in accordance with this Court's CCMP (D.I. 16).

Respectfully submitted,

Brian M. Rothery

cc:     Counsel of Record

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI · WASHINGTON, DC
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM